**In the Matter of PHM CREDIT CORPORATION, a Michigan corporation, Debtor.**

**UNITED STATES TRUSTEE, Appellant,**

**v.**

**PHM CREDIT CORPORATION, Appellee.**

Civ. A. No. 89–70219.

United States District Court, E.D. Michigan, S.D.

April 13, 1989.

was not clearly erroneous, the court need not reach this issue.

Tauras N. Ziedas, Office of the U.S. Trustee, Detroit, Mich., for appellant.

Sheldon S. Toll, Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for appellee.

## MEMORANDUM OPINION AND ORDER

FEIKENS, District Judge.

In this Chapter 11 bankruptcy case, the United States Trustee ("Trustee") seeks leave to appeal the order of appointment of Honigman Miller Schwartz and Cohn ("Honigman") as attorney for the debtor-in-possession. On November 18, 1988, Pulte Home Mortgage Credit Corporation ("PHMCC"), a subsidiary of Pulte Home Mortgage Corporation ("PHM"), filed a voluntary petition for bankruptcy. At the same time, Honigman submitted an application to represent PHMCC and a statement disclosing its connections with the debtor. On November 21, 1988, U.S. Bankruptcy Chief Judge Ray Reynolds Graves approved Honigman's appointment, then reassigned this case to U.S. Bankruptcy Judge Steven W. Rhodes.

PHM is a publicly-held corporation listed on the New York Stock Exchange. Its subsidiary, PHMCC, is a limited-purpose

finance company, which issued nearly $100,000,000 in mortgage-backed bonds. Honigman stated that it has special expertise in this case because it helped PHMCC develop this complex financing arrangement.

On December 7, 1988, Honigman submitted a supplemental disclosure statement regarding its ties with PHMCC. Honigman stated that one of its partners, Alan Schwartz, served on PHM's Board of Directors. Another partner, Mark Shaevsky, acted as PHM's Secretary. Both Schwartz and Shaevsky owned stock in PHM; their combined holdings amounted to less than 1% of PHM's total stock. The Honigman firm also had a $10,000 prepetition claim against PHMCC for nonbankruptcy-related legal services. Honigman waived this claim. The Trustee asserts that, based on these disclosures, Honigman could not qualify as PHMCC's attorney in this bankruptcy case.

On December 9, 1988, Judge Rhodes held a hearing which addressed the Trustee's objection to Honigman's appointment. The Trustee argued that since the firm did not meet the "disinterested person" requirements of 11 U.S.C. § 327(a), it had not qualified for appointment from the outset. On December 20, Judge Rhodes authorized the Honigman appointment on several conditions. First, Judge Rhodes ordered Shaevsky to resign as Secretary of PHM. Second, Schwartz was ordered to recuse himself from any board deliberations regarding PHMCC. Third, the Trustee would review PHM's board minutes to monitor compliance with Judge Rhodes' order. Fourth, Honigman was ordered to notify the Court and the parties of any further conflicts of interest which might arise. Finally, Judge Rhodes specifically reserved the authority to review and approve Honigman's fees. The Trustee brought this motion for leave to appeal after Judge Rhodes denied the Trustee's motion for reconsideration of his order.

The Trustee presents several arguments in support of his motion for leave to appeal. The Trustee begins by addressing the substantial number of cases holding that appeals from motions for attorney disqualification are interlocutory and not otherwise appealable as final judgments under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Trustee distinguishes the present case because he has not appealed from a motion for disqualification, but has objected to Honigman's appointment from the outset. The Trustee claims that Honigman's appointment constitutes a discrete judicial unit which I should treat as final in this bankruptcy context, even though no court in this Circuit has yet adopted this approach to finality. The Trustee then claims that under both the *Cohen* doctrine and the guidelines contained in 28 U.S.C. § 1292(b), I should take this appeal. Honigman and PHMCC maintain that this issue is not appealable on an interlocutory basis.

On March 23, 1989, I held a hearing on this matter. Honigman stated that a reorganization plan paying all of the creditors in full is about to be confirmed. Honigman also said that PHMCC has submitted a proposed plan and disclosure statement, which was to be heard in bankruptcy court on April 4, 1989. The Honigman firm projected that PHMCC will conclude its bankruptcy case by approximately June 1, 1989.

The source of district court jurisdiction over bankruptcy appeals is 28 U.S.C. § 158(a), which states in relevant part:

> The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.

28 U.S.C. § 158(a).

Under this provision, I have discretion to grant leave to appeal from interlocutory bankruptcy orders. *In re Looney*, 823 F.2d 788, 790 (4th Cir.1987) *citing* 28 U.S.C. § 158(a) (1982), *cert. denied* —— U.S. ——, 108 S.Ct. 488, 98 L.Ed.2d 486. If the Trustee has appealed a final order, I must

take the appeal. *In re Sun Valley Foods Company,* 801 F.2d 186, 189 (6th Cir.1986).

I find that the Trustee has appealed from an interlocutory order, rather than a final order. For the reasons discussed hereinafter, I decline to hear this appeal on an interlocutory basis. The Trustee may raise these issues on appeal from a final judgment of the bankruptcy court.

Several cases have held that in bankruptcy, as in most civil actions, denial of attorney disqualification motions are interlocutory, not final, orders. *See In re Delta Services Industries,* 782 F.2d 1267, 1272 (5th Cir.1986); *In re Continental Investment Corp.,* 637 F.2d 1, 3 (1st Cir.1980); and *In re Casco Bay Lines,* 14 B.R. 846, 847 (D.Maine 1981). There is no reason to give greater appealability to orders denying motions to disqualify counsel in bankruptcy cases than to those in ordinary civil cases. *In re Delta Services Industries, supra,* at 1272.

The Trustee argues that such cases are inapposite because he has appealed Honigman's appointment *ab initio,* rather than appealing a denial of disqualification. This is a distinction without difference. *In re Delta Services, id.,* applied the principle that denial of disqualification is interlocutory to an *ab initio* objection to appointment. Further, the finality requirement serves strong congressional policies against piecemeal reviews and against obstructing and impeding ongoing judicial proceedings, *United States v. Nixon,* 418 U.S. 683, 690, 94 S.Ct. 3090, 3098, 41 L.Ed. 2d 1039 (1973) *citing Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), and the requirement helps avoid harassment and delay. *Firestone Tire and Rubber Company v. Risjord,* 449 U.S. 368, 373–74, 101 S.Ct. 669, 672–73, 66 L.Ed.2d 571 (1981). These policies apply to appeals from appointment as well as to appeals from denial of disqualification. Notwithstanding the more flexible interpretation of finality some courts have used, as in the cases finding discrete judicial units, I find that Judge Rhodes' order is interlocutory. Therefore, 28 U.S.C. § 158(a) does not require me to take this appeal now.

Nor does Judge Rhodes' order fall within the collateral order exception to the finality doctrine. Under *Cohen v. Beneficial Industrial Loan Corporation, supra,* an order will be treated as final if it: (1) finally determines rights collateral to and separable from the main proceeding; (2) presents a serious and unsettled question; and (3) is effectively unreviewable on appeal from final judgment such that denial of immediate review will harm the appellant irreparably. *In re Wieboldt Stores, Inc.,* 68 B.R. 578, 580 *citing In re Huff,* 61 B.R. 678, 681 (N.D.Ill.1986). If there is doubt whether an order is collateral, the matter should be resolved in favor of finding a nonappealable controversy. *In re Casco Bay Lines, Inc., supra,* 14 B.R. at 847 *citing In re Continental Investment Corp., supra,* 637 F.2d at 4; *In re Lloyd, Carr and Co.,* 614 F.2d 17, 19–20 (1st Cir.1980). I find that the Trustee has failed to show the third requirement in *Cohen.*

The Trustee argues that Honigman did not meet the requirement of disinterest imposed by the following statute:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

In relevant part, the statute defines a "disinterested person" as one who:

> (A) is not a creditor, an equity security holder, or an insider;
>
> (D) is not and was not, within two years before the date of the filing of the petition, a director, officer of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph;
>
> . . . .

11 U.S.C. § 101(13).

These requirements apply to both trustees and debtors in possession. *In re Rob-*

*erts,* 46 B.R. 815, 821 (Bankr.D.Utah 1985) *modified* 75 B.R. 402 (1987). A debtor in possession has all the rights, powers and duties of a trustee. 11 U.S.C. § 1107. Therefore, Honigman, like a trustee's attorney, must satisfy § 327(a). *In re Roberts, supra,* at 821.

In § 327(a), Congress provided an enforcement mechanism as follows:

> Except as provided in section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.

11 U.S.C. § 328(c).

The Trustee argues that one purpose of § 327(a) is to avoid even the appearance of impropriety; this purpose will be unreviewable on appeal from final judgment. Several courts agree that one congressional purpose underlying § 327(a) is to avoid even the appearance of impropriety. *See, e.g., In re Lew H. Thompson,* 54 B.R. 311, 316 (Bankr.N.D.Ohio 1985) *citing In re Codesco, Inc.,* 18 B.R. 997, 999–1000 (Bankr.S.D. N.Y.1982) *affd.* 77 B.R. 113.

However, Congress chose to enforce § 327(a) with a fee waiver provision, which often applies at a case's conclusion. Apparently, Congress believed that its purposes underlying § 327(a) would be sufficiently addressed at the close of a case, contrary to the Trustee's argument.

■ Congress also gave the bankruptcy courts discretion in enforcing § 327(a). Fee waiver is discretionary with the bankruptcy court. *In re Pierce,* 809 F.2d 1356, 1363 (8th Cir.1987). Section 328(c) provides

that a court may waive fees for failure to meet § 327 standards. Bankruptcy courts, as courts of equity, also have discretion to enforce § 327 by disqualification, even though this remedy is not statutorily mandated. *In the Matter of Roger J. Au and Son, Inc.,* 65 B.R. 322, 326 (Bankr.N.D. Ohio 1984) *affd* 64 B.R. 600 (1986). The court in *Roger J. Au* exercised this equitable power because the statutory remedy, fee waiver, was inadequate. *Id.* at 326. Since a bankruptcy court has the equitable power to disqualify counsel, I find that Judge Rhodes had the lesser-included power to take the more moderate steps embodied in his curative order of December 20, 1988. For the purpose of deciding this motion for leave to appeal only, I find that Judge Rhodes acted within his discretion in taking the curative measures as to Shaevsky's resignation, Schwartz's recusal and the Trustee's monitoring of the situation. These steps avoid any irreparable harm which might have arisen from any appearance of impropriety.[1]

Although the Trustee argues that the United States Court of Appeals for the Sixth Circuit disapproved of such curative measures in *In re Georgetown of Kettering Ltd.,* 750 F.2d 536 (6th Cir.1984), that case did not address curative measures. The court stated:

> The fact that Gagel's creditor interest was subsequently disallowed does not serve to obviate the conflict, as suggested by the district court, but rather enhances the conflict. *See* Advisory Note to Rule 215(c) ("[I]f there is a question as to the validity of a general creditor's claim, his attorney would be subject to a disqualifying interest.").

*Id.* at 540. The court did not say that Gagel's interest was waived as a curative measure, as in this case. Rather, the court referred to Rule 215(c), which stated:

> Employment by a General Creditor. An attorney or accountant shall not be disqualified to act as attorney for the trust-

---

1. Although Judge Rhodes' order did not require Schwartz or Shaevsky to sell their PHM stock, the Trustee allows that if this were Honigman's only connection to PHMCC, disqualification might not be necessary. *Appellant United States*

*Trustee's Brief on Appeal of Amended Order Authorizing Appointment of Attorneys* at page 19. I will not assume the Trustee argues that this stock ownership alone creates an appearance of impropriety.

ee or receiver merely because of his employment by a general creditor in the case.

*In re Georgetown of Kettering Ltd., supra,* at 539, fn. 4.

In *Georgetown* the challenged attorney represented Gagel, an unsecured creditor for 90% of all unsecured debts, at the same time that he represented the debtor in possession. The cited advisory note restricted Rule 215(c) by disqualifying a general creditor's attorney where the validity of the creditor's claim was questioned. Since Gagel's claim was disallowed, his claim had been questioned, thereby creating a Rule 215(c) basis for disqualification.

*Georgetown* does not prohibit Judge Rhodes' curative order. Further, at least one case cited by the Trustee, and recommended as "scholarly" by other counsel in this case, specifically approved curative measures. The court in *In re Roberts, supra,* considered the alternatives for an attorney whose client petitioned for bankruptcy, while owing the lawyer prepetition fees. The court suggested that:

> To avoid this predicament [creditor status], a law firm could waive all fees and costs incurred for services unrelated to the bankruptcy case, thus eliminating its status as a creditor of the debtor in possession.

*Id.* at 849.

Judge Rhodes included Honigman's fee waiver in his order, as *Roberts* suggests. I find no reason to allow a cure by fee waiver, but not by the other pragmatic means Judge Rhodes employed. At a minimum, Judge Rhodes' order sufficiently cures any appearance of impropriety to avoid the irreparable harm necessary under *Cohen, supra.* I emphasize that I do not now reach the question whether Honigman actually conformed to § 327(a).

The Trustee argues that Judge Rhodes should not have considered factors such as the parties' consent to Honigman's appointment or the added expense of new counsel because expediency cannot control where, as here, there is a clear statutory proscription. At this point, I only note that there is a split of authority on this issue. *Compare*

*In re Gray,* 64 B.R. 505 (Bankr.E.D.Mich. 1986), and *In re Roberts, supra,* with *In re Automend, Inc.,* 85 B.R. 173 (Bankr.N.D. Ga.1988); *In re Iorizzo,* 35 B.R. 465 (Bankr.E.D.N.Y.1983); and 2 L. King *Collier on Bankruptcy,* ¶ 327.03 at 327–16 to 327–17 (15th Ed.1989). While protection of appearances may be one purpose of § 327(a), Title 11 has additional conflicting purposes which may require a pragmatic solution.

The Trustee further argues that the harm to its role in monitoring professionals' employment, and in not monitoring PHM, in this bankruptcy context will be irreparably harmed unless addressed immediately. I find that the questions concerning the Trustee's role, as well as the basis for Judge Rhodes' decision, may be effectively reviewed later. The Trustee, the sole appellant here, will not suffer irreparable harm by waiting to raise these issues. These questions do not presently meet the third requirement in *Cohen.*

■ Notwithstanding the Trustee's failure to satisfy the requirements in *Cohen,* 28 U.S.C. § 158(a) gives me discretion to take this interlocutory appeal. I should exercise this discretion sparingly, since interlocutory bankruptcy appeals should be the exception, rather than the rule. *In re Wieboldt Stores, supra,* at 580; *In re Huff,* 61 B.R. 678, 682 (N.D.Ill.1986).

■ Because § 158(a) contains no criteria to guide the exercise of this discretion, district courts have looked to circuit court standards governing interlocutory appeals in 28 U.S.C. § 1292(b). *See, e.g., Wieboldt* and *Huff, supra; In re Southern Industrial Banking Corporation,* 70 B.R. 196 (E.D.Tenn.1986). In light of the § 1292(b) standards, I decline to exercise my § 158(a) discretion over this appeal.

In applying § 1292(b), the United States Court of Appeals for the Sixth Circuit has required four elements:

(1) The question involved must be one of "law";

(2) It must be controlling;

(3) There must be substantial ground for "difference of opinion" about it; and

(4) An immediate appeal must materially advance the ultimate termination of the litigation.

*Id.* at 201 *citing Cardwell v. Chesapeake & Ohio Ry. Co.,* 504 F.2d 444, 446 (6th Cir.1974).

The Trustee has not met two of these requirements. The Trustee concedes that this appeal would not materially advance the suit's ultimate termination. *Brief in Support of Motion for Leave to Appeal Amended Order Authorizing Appointment of Attorneys,* at page 13. Neither does this appeal present a controlling question of law. The United States District Court for the Ninth Circuit has held that an erroneous recusal order is not controlling because it would not materially affect the outcome of litigation. *In re Cement Antitrust Litigation,* 673 F.2d 1020, 1026–27 (9th Cir.1982) *judgment aff'd* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1982). The term "controlling" has also been described as one whose incorrect disposition amounts to reversible error, on appeal. *Southern Industrial Banking, supra,* at 201. Finally, one treatise notes that "a growing number of decisions has accepted the rule that a question is controlling, even though its disposition might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants." 16 C. Wright, A. Miller, E. Cooper and E. Gressman *Federal Practice and Procedure,* § 3930 at 159–160 (1977) (footnote omitted).

The issue of Honigman's disqualification is not controlling under any of these definitions. Since a judge's recusal does not materially affect a case's outcome, Honigman's possible disqualification should not materially affect this case's outcome. The Trustee has not suggested that Honigman's disqualification could require reversal of this case later. This appeal would not save time and expense.

On the contrary, taking this interlocutory appeal now would cause considerable delay and increased expense. The attorney for the creditor's committee estimates that substitution of attorneys would cost the estate from one-half to one million dollars in legal fees and require at least ninety days to educate the new attorneys. *Brief of Appellee, PHM Credit Corp., Regarding Appeal of U.S. Trustee to Disqualify Honigman Miller Schwartz and Cohn as Counsel for PHM Credit Corp.,* at page 13. The district court in *Southern Industrial Banking, supra,* at 201, cited delay of the bankruptcy case as one reason for its refusal to hear an interlocutory bankruptcy appeal. I should consider delay and expense here because the factors in § 1292(b) should be viewed as a direction to consider the probable gains and losses of immediate appeal. 16 *Federal Practice and Procedure, supra,* at 156. Because the Trustee has not met the standards of § 1292(b), and immediate appeal would add unnecessary delay and expense when this case is about to conclude, I decline to exercise my § 158(a) discretion to take this interlocutory appeal.

Accordingly, IT IS ORDERED that the United States Attorney's motion for leave to appeal the bankruptcy court's order authorizing the appointment of Honigman Miller Schwartz and Cohn is hereby DENIED.